WO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Julienne Mounkam, | ) | No. CV 04-58-TUC-HCE |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Terry E. Way, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

On March 20, 2006, the Court entered an order: (1) denying Plaintiff's Motion for Summary Judgment (hereinafter "Plaintiff's MSJ"); and (2) granting Plaintiff leave to present argument and evidence in compliance with Rule 56 of the Federal Rules of Civil Procedure as to why summary judgment should not be granted in favor of Defendant.  On April 17, 2006, Plaintiff filed her "Response to *Sua Sponte* Summary Judgment for Defendant" (hereinafter "Plaintiff's Response").  On May 12, 2006, Defendant filed his Reply (hereinafter "Defendant's Reply"). For the following reasons, the Court grants summary judgment in favor of Defendant.

The Magistrate Judge has jurisdiction over this matter by consent of the parties pursuant to 28 U.S.C. §636(c).

## I.      FACTUAL & PROCEDURAL BACKGROUND

Plaintiff has filed the instant action challenging the decision of the Immigration and Naturalization Service (hereinafter "INS")[1] denying her request for derivative asylum for her children and her husband's children and her request to extend the time period in which to seek such derivative asylum.  The undisputed facts follow.

Plaintiff, Julienne Mounkam, is a native of Cameroon.  She entered the United States in 1998 on a visitor's visa. (Defendant's Statement of Facts in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment[2] (hereinafter "DSOF") Ex. 1, p.23) In 1999, Plaintiff, through her then attorney,[3] filed an application for political asylum and on March 22, 2000, the INS granted Plaintiff asylum status as of March 15, 2000.  (DSOF, Ex. 1, pp.23-34, 41-42) The INS notification of "Asylum Approval" also stated:

> In order to request derivative asylum status for any spouse or child who was not included in your asylum request, you must submit a Form I-730, Refugee and Asylee Relative Petition, to the Immigration and Naturalization Service (INS)....You may obtain any of the forms noted above at an INS District Office or INS Forms Center.  Instructions with or on the forms explain how to complete the forms, what documents to attach and where to send the

---

[1]The INS has "ceased to exist as an independent agency" within the United States Department of Justice and its functions were transferred to the newly formed Department of Homeland Security.  *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1043 n.1(9th Cir. 2004) (*citing* Homeland Security Act of 2002, Pub.L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002)). That change does not affect resolution of this matter. For ease of reference  and because of the status of the agency at the time giving rise to the events at issue in  this case, the Court will refer to the agency as "the INS or "the Service."

[2]Neither party filed exhibits with their briefs addressing whether summary judgment should be entered in favor of Defendant.  They instead cite exhibits submitted during the briefing of Plaintiff's Motion for Summary Judgment.

[3]The attorney who filed Plaintiff's application for asylum is not the same attorney who represents Plaintiff in the instant action.  (*See* DSOF, Ex. 1, p.30)

completed forms.

(DSOF, Ex.1, pp. 41-42)

In April 2000, Plaintiff, through the same attorney who handled her application for asylum, petitioned for derivative asylum status for her husband who was living in the United States. (Plaintiff's Statement of Facts (hereinafter "PSOF")[4], p.2; DSOF, p.1 & Ex.2) The instructions for completing Form I-730 filed by Plaintiff on behalf of her husband in April 2000 state that derivative asylum applications, i.e. Form I-730, must be filed within two years of when the primary applicant was granted refugee/asylee status. (DSOF, Ex. 2) On March 9, 2001, the INS granted derivative asylum status to Plaintiff's husband. (DSOF, Ex. 3)

In June 2002, Plaintiff petitioned for derivative asylum status for her three children and for her spouse's two children. (DSOF, Ex.1, pp.21, 44-45) On January 16, 2003, the INS denied Plaintiff's petition as untimely. (Id. at pp.44-45) The INS informed Plaintiff that "a petitioner must file Form I-730[5] within two years of the date he or she was granted asylum status." (Id. at p.44) Because Plaintiff was granted asylum status as of March 15, 2000, her June 2002 request for derivative asylum status was filed

> more than two years after you were granted asylum in the United States. It does not appear that circumstances exist which would warrant the extension of the filing period. Therefore, you are ineligible to file Form I-730 at this time, and this petition may not be approved.
>      In view of the above, this petition must be and hereby is denied.

---

[4]Plaintiff did not submit a sworn statement to support her Statement of Facts filed with her Motion for Summary Judgment. Because review of the parties' separate statements of facts and supporting documentation filed with regard to Plaintiff's Motion for Summary Judgment, there is no dispute regarding the facts material to resolving the instant motion.

[5]To request derivative asylum status, a petitioner must submit to the INS Form I-730: "Refugee and Asylee Relative Petition" (DSOF, Ex. 1, p.41). *See also,* 8 C.F.R. § 208.21.

This denial may not be appealed.  However, if you believe that you can overcome the grounds for denial, you may submit a new petition with the appropriate documentation to this office.

(Id., at pp. 44-45)

"In March of 2003, Plaintiff filed new I-730 Petitions and additional documentation to support her request for an extension of the two-year filing period based on humanitarian reasons, as specified in the INS regulations."  (PSOF, p.3.  *See also* DSOF, Ex. 1) Plaintiff's March 2003 submission included a letter wherein Plaintiff indicated that her "asylum approval notice instructed her to file a form I-730 for her children to obtain derivative asylum status but did not inform her of the" deadline for seeking derivative asylum; her attorney did not inform her of such deadline; and she learned about the deadline only when her June 2002 petitions for derivative asylum for the children were denied as untimely.  (DSOF, Ex. 1, p. 21) Plaintiff also indicated that she was requesting an extension of the "filing period based on the following humanitarian reasons": her three children live in Cameroon with her parents who are 69 and 70 years old; her parents do not work and "barely can support and take care of themselves much less three teenage children"; her mother is ill with diabetes; Plaintiff sends $600 to $800 every three months to her parents to help with expenses; and Plaintiff's "parents are simply not physically, emotionally, and financially capable of taking care of these kids."  (Id. at pp. 21-22) Plaintiff's two stepchildren live in Canada with their mother.  (Id. at p. 22) Plaintiff referenced in her March 2003 letter and application and submitted therewith statements from her stepchildren's biological mother indicating that the children are growing up without a positive male influence, "are increasingly missing their father" and that the "growing risk to their mental and emotional health has become a daily concern."  (Id.

- 4 -

at pp. 21, 102) "For their emotional equilibrium" their mother granted permission for the children to reside with Mr. Mounkam.  (Id. at p.102)  Plaintiff further pointed out that given that the "visa quota wait is *many* years," and that the "N[ebraska] S[ervice] C[enter] has acknowledged that it is so far behind in processing the I-485s for asylum cases that it could take over ten years *just* to adjudicate the I-485...without the derivative basis, these kids won't be able to join their own mother and father for *many* year's [sic]."  (Id. at p. 22)  (emphasis in original)  In reference to her own children, Plaintiff stated that "[i]t is quite likely that during this long wait, the grandparents will die and minor children will be left with no adult supervision.  For humanitarian reasons, please extend the time...."  (Id.)

 On November 4, 2003, the INS once again denied Plaintiff's Petition as untimely as follows:

>...You have requested an extension of the two-year filing limit for "humanitarian reasons."
>
>Each request for a humanitarian extension of the two-year requirement, as allowed by law, is carefully reviewed on an individual basis.  The extension of the two-year requirement is a discretionary remedy.  An individual may overcome the filing deadline by demonstrating "humanitarian reason," [sic] while [sic] his/her petition should be accepted after the two years have expired.  There is [sic] no guideline or rules that can be, or have been, set down to establish when a case meets the basis of a humanitarian extension.
>
>You indicated in your request you were not aware that you had to file an I-730 within two years of being granted asylum, until your first I-730 was denied August 15, 2001 [sic].  While it is regrettable that you failed to file your I-730 timely, your reason does not warrant "humanitarian reasons" for extending the two year filing deadline in the exercise of discretion.
>
>Please note that an approval of a late-filed petition reduces the number of visas available to those refugees and asylees who currently seek initial relief.  Therefore, the Service will extend the filing period for a late filed Form I-730 on a case by case basis and in light of compelling evidence to show that circumstances of humanitarian nature prevented the principal/refugee from filing timely.
>
>In visa petition proceedings, the petitioner bears the burden of

establishing eligibility for the benefits sought.  *Matter of Brantigan,* 11 I&N Dec. 493 (BIA 1996).  The petition has clearly not met such a burden.

In view of the above, this petition must be and hereby is denied.

This denial may not be appealed.  However, if you believe that you can overcome the grounds for denial, you may submit a new petition with the appropriate documentation to this office.

(PSOF, Ex. C; DSOF, Ex.1, pp. 70-72)

The regulation setting out the two-year time limit for filing Form I-730 was published in the Federal Register on January 27, 1998.  (DSOF, Ex. 4) That provision is codified at 8 C.F.R. §208.21(d) and states in pertinent part:

Spouse or child outside the United States. When a spouse or child of an alien granted asylum is outside the United States, the asylee may request accompanying or following-to-join benefits for his/her spouse or child(ren) by filing a separate Form I-730 for each qualifying family member....*A separate Form I-730 for each qualifying family member must be filed* before February 28, 2000, or *within 2 years of the date in which the asylee was granted asylum status, whichever is later, unless the Service determines that the filing period should be extended for humanitarian reasons* ...

8 C.F.R. § 208.21(d) (governing "Admission of the asylee's spouse and children") (emphasis added).

## II.    SUMMARY JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure, a party may seek summary judgment where there is no genuine issue as to any material fact and that party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The initial burden rests on the moving party to point out the absence of any genuine

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although reference is made to the movant's "burden," Rule 56 places no evidentiary burden on the moving party beyond that which is required to prevail at trial. Therefore, while the adverse party must offer evidence sufficient to raise a genuine issue of fact on an issue for which that party has the burden of proof, the moving party need provide nothing more than a reference to those materials on file in the case that support the movant's belief that there is an absence of any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once satisfied, the burden shifts to the opponent to come forward with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)). See also *Celotex,* 477 U.S. at 324 (the opponent must demonstrate through production of probative evidence that an issue of fact remains to be tried.) Indeed, a party opposing summary judgment may not rest on mere allegations or denials in his pleading. Fed. R. Civ. P. 56(e). Nor may the opponent rely upon conclusory or speculative testimony to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distrib.,* 69 F.3d 337, 345 (9th Cir. 1995).

When judging the evidence at the summary judgment stage, a district court does not make credibility determinations or weigh conflicting evidence but the court is required to view all inferences in the light most favorable to the non-moving party. *Musick,* 913 F.2d at 1394. The ultimate question is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). The mere

existence of a scintilla of evidence supporting the non-movant's position will be insufficient; there must be evidence from which the jury could reasonably find for the non-movant. *Anderson,* 477 U.S. at 252.  If the factual context makes the non-movant's claim implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary.  *Matsushita,* 475 U.S. at 587.

## III.   DISCUSSION

### A.      Jurisdiction

In response to Plaintiff's Motion for Summary Judgment, Defendant argued that this Court lacked jurisdiction to consider Plaintiff's claim.  Plaintiff did not file a Reply to Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment.  When denying Plaintiff's Motion for Summary Judgment, the Court declined to address the issue of jurisdiction because, *inter alia,* even if jurisdiction did exist, Plaintiff failed to establish that equitable tolling should apply to her case.  (March 20, 2006 Order, pp.5-6) "Defendants [sic] again urge that this court lacks jurisdiction to review a discretionary decision to deny asylum. 8 U.S.C. § 1252(a)(2)(B)(ii)."[6]  (Defendant's Reply, p. 2) Plaintiff has not addressed the issue of jurisdiction in her briefs of record.  Plaintiff's Complaint indicates that the Court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201; the Administrative Procedure Act (hereinafter "APA"), 5 U.S.C. § 702; federal question jurisdiction, 28 U.S.C. § 1331; and the Mandamus Act, 28 U.S.C. § 1361.  Plaintiff bears the burden of establishing subject matter jurisdiction.  *Hexom v. Oregon Dep't. of Transp.,* 177

---

[6]The statute cited by Defendant is part of the Illegal Immigration Reform and Immigrant Responsibility Act (hereinafter "IIRIRA").

F.3d 1134,  1135 (9th Cir. 1999).

To the extent that Plaintiff relies on the Declaratory Judgment Act to establish federal jurisdiction, it is well-settled that "the Declaratory Judgment Act is not a jurisdictional statute.  It does not create subject matter jurisdiction where none otherwise exists.  It only creates a particular kind of remedy available in actions where the district court already has jurisdiction to entertain a suit." *Jarrett v. Resor,* 426 F.2d 213, 216 (9th Cir. 1970).  *See also* Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 10B *Federal Practice and Procedure,* §2755 (3d. ed. 1998) ("[T]he Declaratory Judgment Act merely makes a remedy available and does not confer jurisdiction if it does not otherwise exist.")  Thus, if jurisdiction does not otherwise exist, Plaintiff cannot rely on the Declaratory Judgment Act as a basis for federal jurisdiction over her claim.

Likewise, "[i]t is beyond question...that the APA does not provide an independent basis for subject matter jurisdiction in the district courts."  *Tucson Airport Authority v. General Dynamics Corp.,* 136 F.3d 641, 645 (9th Cir. 1998)(*citing Califano v. Sanders,* 430 U.S. 99, 105 (1977)).  As discussed *infra,* while the APA may not confer jurisdiction, it may "withdraw[] jurisdiction to review agency decisions." *Spencer Enterprises, Inc. v. United States,* 345 F.3d 683, 688 (9th Cir. 2003).

Because the Declaratory Judgment Act and the APA do not confer jurisdiction, Plaintiff must establish that this Court has jurisdiction under either 28 U.S.C. § 1331 or 28 U.S.C. § 1361 as cited in her Complaint.

### 1.    Federal Question Jurisdiction, 28 U.S.C. § 1331

"[A]gency actions are generally reviewable under federal question jurisdiction,

pursuant to 28 U.S.C. § 1331" unless a statute has otherwise deprived the federal courts of such jurisdiction. *Spencer Enterprises, Inc.*, 345 F.3d at 688-689. The question is whether the IIRIRA, and/or the APA preclude this Court from reviewing the agency decision herein.

a.   The IIRIRA

Defendant contends that under 8 U.S.C. § 1252(a)(2)(B)(ii), the Court lacks jurisdiction to review the agency determination herein. (Defendant's Reply, p. 2) Section 1252(a)(2)(B)(ii) strips the federal courts of jurisdiction to review certain INS decisions:

> *Denials of discretionary relief*
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and *regardless of whether the judgment, decision, or action is made in removal proceedings*, no court shall have jurisdiction to review...(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security, *the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a)[7] of this title.*

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). *See also, Spencer,* 345 F.3d at 688.[8] The Ninth Circuit has recognized that an "example of the type of decisions whose authority is specified by statute to be entirely discretionary, and would therefore be covered by section 1252(a)(2)(B)(ii), is the granting of asylum. The Attorney General '*may* grant asylum' to aliens who qualify, 8 U.S.C. § 1158(b)(1), (emphasis added), but need not. Despite the fact

---

[7]Section 1158(a) governs "Authority to apply for asylum."

[8]The Ninth Circuit's observation in *Spencer*, 345 F.3d at 692 that section 1252(a)(2)(B)(ii) may not apply outside the removal context is no longer a concern given that the statute has since been amended to reflect its application "regardless of whether the judgment, decision, or action is made in removal proceedings...." Pub.L.No. 109-13, 119 Stat. 231, 305 (May 11, 2005).

that there may be many non-discretionary elements of asylum eligibility, the ultimate authority whether to grant asylum rests entirely in the discretion of the Attorney General." *Spencer,* 345 F.3d at 690.

However, Congress specifically exempted asylum determinations under section 1158(a) from section 1252(a)(2)(B)(ii). Plaintiff's request for derivative asylum is made pursuant to 8 U.S.C. § 1158(b)(3), "Treatment of spouse and children." Neither party has addressed whether the exemption for asylum determinations in section 1252(a)(2)(B)(ii) extends to determinations concerning derivative asylum under 8 U.S.C. § 1158(b)(3). Given that under section 1158(a)(1) "[a]ny alien who is physically present in the United States... may apply for asylum *in accordance with this section*" (emphasis added), it follows that an application under "this section", i.e., section 1158, for derivative asylum pursuant to subsection (b)(3) would be subsumed into the IIRIRA's exclusion of determinations made under section 1158(a). Therefore, Defendant's reliance on the IIRIRA to preclude the exercise of federal jurisdiction over Plaintiff's action is misplaced.

### b.      The APA

The APA, "which generally provides the standards of review for agency action, also withdraws jurisdiction to review agency decisions that are 'committed to agency discretion by law.'" *Spencer,* 345 F.3d at 688 (*quoting* 5 U.S.C. § 701(a)(2)). Section 701(a)(2) "applies only where 'the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (*quoting Heckler v. Chaney,* 470 U.S. 821, 830 (1985)).

Defendant correctly points out that the decision to grant derivative asylum status is

entirely discretionary.  *Miljkovic v. Ashcroft,* 366 F.3d. 580, 582 (7th Cir. 2004) (the grant of derivative asylum status "is not automatic but requires an exercise of discretion by the immigration authorities."); *Huli v. Way,* 393 F.Supp.2d 266, 270 (S.D.N.Y. 2005) ("The decision to grant derivative asylum status is entirely discretionary.") Section 1158(b)(3) governing derivative asylum status provides that "[a] spouse or child...of an alien who is granted asylum under this subsection *may*...be granted the same status as the alien...." 8 U.S.C. §1158(b)(3) (emphasis added).  The Ninth Circuit has recognized that similar language in the asylum statute that the Attorney General "*may* grant asylum" to eligible aliens specifically indicates that the determination whether to grant asylum is "left entirely to the discretion of the Attorney General with no governing statutory standards." *Spencer,* 345 F.3d at 690.  Therefore, the statutory language indicates that the Attorney General's authority specified by section 1158(b)(3) is entirely discretionary.  *See Id.; Miljkovic,* 366 F.3d at 582; *Huli,* 393 F.Supp.2d at 270.

Even where a reading of the statute supports the conclusion that the agency decision is discretionary, the challenged decision "may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which [the] court may review [the agency's] exercise of discretion." *Spencer,* 345 F.3d at 688.  The regulation at issue herein requires that an application for derivative asylum status "must be filed...within 2 years of the date in which the asylee was granted asylum status...unless the Service determines that the filing period should be extended for humanitarian reasons."  8 C.F.R. §208.21(d).  The Service has been clear that "[t]here is [sic] no guideline or rules that can be or have been, set down to establish when a case meets the basis of a humanitarian extension." (DSOF, Ex. 1,

p.71).  *See also* 83 Fed.Reg. 3792-01, 3793 (January 27, 1998)[9] (recognizing that the regulation did not "define which 'humanitarian reasons' warranted an extension" and stating that "defining the specific qualifying 'humanitarian reasons' would only act to restrict severely the category....")  Although, when the regulation was promulgated, the Service indicated that it would "provide guidance to Service officers, if necessary, in order to ensure uniformity in the decision process," the instant record does not reveal that the Service has provided such guidance or that any guidance provided a meaningful standard by which to review such determinations.  83 Fed.Reg. at 3793.  Consequently, neither the regulation at issue nor the Service's practice provide a meaningful standard by which a court may review the Service's determination herein.  Review of the Service's determination in Plaintiff's case is precluded by the APA.

                    2.      The Mandamus Act

       Plaintiff is also unable to establish jurisdiction under the Mandamus Act, 28 U.S.C. §1361.  The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361. Mandamus is an extraordinary remedy that will only lie when a plaintiff's claim "is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt."  *Jarrett,* 426 F.2d at 217.  *See also Heckler v. Ringer,* 466 U.S. 602, 616 (1984) (Section 1361 offers a remedy only where the government official or agency owes the petitioner a "clear nondiscretionary duty.").   As discussed *supra* at pp. 12-13, the decision

_____

       [9]The text cited is attached to DSOF, Ex. 4.

to grant derivative asylum status is entirely discretionary as is the decision to grant an extension under 8 C.F.R. § 208.21(d).  "Because mandamus does not lie to direct an agency to rule in a particular way on a decision within its discretion, Section 1361 does not provide jurisdiction in this proceeding."  *Huli,* 393 F.Supp.2d at 270 (section 1361 did not provide jurisdiction for court to review plaintiff's challenge of INS' denial of derivative asylum status). *See also State of Cal. v. Settle,* 708 F.2d 1380, 1384 (9th Cir. 1983) ("Mandamus may not be used to force the exercise of discretion in a particular way.")

     B.     Alternative ruling on the merits

Even if the Court were to conclude that jurisdiction existed to review the Service's action in this case, the record supports the conclusion that Plaintiff would not prevail.

Plaintiff challenges the Service's determination that her reason for an extension of the time to seek derivative asylum status did not meet the "'humanitarian reasons" requirement "for extending the two year filing deadline in the exercise of discretion" given that "the Service will extend the filing period...on a case by case basis and in light of compelling evidence to show that circumstances of humanitarian nature prevented the principal/refugee from filing timely."  (DSOF, Ex. 1, p.71) Plaintiff argues that the Service misinterpreted the regulation because "an extension of the filing deadline for 'humanitarian reasons' does not depend on the alien's explanation for failure to submit a timely filing, and Defendant cannot deny the extension merely because the alien was ignorant to [sic] the two-year filing window."  (Plaintiff's Response, pp. 4-5) Plaintiff contends that in place of the Service's interpretation, "[t]he approval of the extension" should instead depend "on the humanitarian hardship to the alien and/or beneficiaries if the requested derivative asylum is not obtained."

(Id. at p.5)

Federal courts "owe agency interpretations of their own regulations substantial deference."  *Lal v. INS,* 255 F.3d 998, 1004 (9th Cir. 2001), *amended* 268 F.3d 1148 (9th Cir. 2001), (*citing Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512 (1994)).[10]  In such circumstances, the Court's "task is not to decide which among several competing interpretations best serves the regulatory purpose.  Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ.,* 512 U.S. at 512 (citation omitted).  *See also Lal,* 255 F.3d at 1004 (applying same standard to the Bureau of Immigration Appeal's interpretation of a regulation).  However, the Court need not defer to the agency's reading of the regulation "if an 'alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation.'"  *Lal,* 255 F.3d at 1004 (*quoting Thomas Jefferson Univ.,* 512 U.S. at 512).

The plain language of the regulation does not compel an interpretation different from that applied by the Service in this case. The regulation merely prescribes the two-year filing deadline for seeking derivative asylum status "unless the Service determines that the filing period should be extended for humanitarian reasons."  8 C.F.R. § 208.21(d).

Turning to the Service's intent at the time of the regulation's promulgation, commentary by the Service indicated that:

---

[10]"Because this case involves the interpretation by the... [INS] of its own regulation, (and not the language of a statute)," the analysis in *Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984) and its progeny involving agency interpretation of congressional legislation and cited by Defendant, does not apply. *Lal,* 255 F.3d at 1004 n.3.

> [d]erivative benefits for refugees and asylees are intended to expediently reunite families in order for them to make the difficult transition to a new life with the support of their immediate family members by avoiding lengthy delays due to visa quotas.  The timely filing of Form I-730 will expedite the reunification of refugee families.

63 Fed.Reg. at 3793.  The Service noted that the absence of a deadline resulted in refugees waiting ten or more years before petitioning for such status for their derivatives.  *Id.*  "Such filings no longer serve the purpose for which they were originally intended, and instead, only serve to deplete limited refugee admission numbers and refugee resettlement monies needed for currently emerging refugee populations."  *Id.*[11]  The Service acknowledged concerns regarding lack of a definition of "humanitarian reasons" as follows:

> Five commenters argued that, since the proposed rule did not define which "humanitarian reasons" warranted an extension of the filing deadline, this would lead to arbitrary and conflicting decisions by Service officers, or create a large category of applicants under this exception. On the contrary, the Service believes that defining the specific qualifying "humanitarian reasons" would only act to restrict severely the category and shut the door on applicants who need this exception most. As with other immigration benefits, applications should be decided on a case-by-case basis. Likewise, although humanitarian exceptions are used throughout other Service regulations, the term is not defined so that individuals with exceptional cases are not shut out.

*Id.*  A reading of the foregoing does not compel the conclusion that at the time of promulgation, the Service intended that the regulation be interpreted differently from the interpretation applied in Plaintiff's case.

Plaintiff contends that evaluation of humanitarian reasons should not "relate to an

---

[11]The Service had originally proposed a one-year deadline for seeking derivative asylum status.  Based on comments that the proposed time-period was "too short or unrealistic", the Service modified the regulation to reflect a two-year deadline. 63 Fed.Reg. at 3793.  In so doing, the Service stated: "[a]lthough the Service believes that 1 year is a reasonable time limit..., the Service would like to acknowledge and address the commenters' concerns by adopting this change." *Id.*

inquiry of the reasons for the late filing," but instead comes into consideration only when determining the merits of the request for derivative asylum status. (Plaintiff's MSJ, pp.9-10; *see also* Plaintiff's Response, pp. 4-5) However, Defendant persuasively points out that "[r]equiring that the applications be filed within a two-year time limitation or that the failure to file within a two-year time limitation be caused by some humanitarian reasons, is not unreasonable. The agency regulation already allowed a fairly significant time, two years, within which to file a derivative application." (Defendant's Reply, p.3) During the promulgation process, the Service recognized that applications for derivative asylum status filed many years after the grant of asylum for the principal refugee "no longer serve the purpose" of reunification for which the availability of derivative asylum status was intended and instead depleted admission numbers and funds for currently emerging refugee populations. 63 Fed. Reg. at 3793. Accordingly, requiring humanitarian reasons to support extension of the deadline is reasonable and consistent with the plain wording of the regulation which provides for an extension when "the Service determines that the filing period should be extended for humanitarian reasons." 8 C.F.R. § 208.21(d).

That the Service chose to require a showing that "circumstances of humanitarian nature prevented the principal/refugee from filing timely" does not render the Service's interpretation plainly erroneous. Plaintiff argues that such an interpretation is "synonymous with 'the common law tool of equitable tolling'" and thus is redundant, unnecessary and consequently erroneous. (Plaintiff's Response, p. 3, n.1; *see also* Plaintiff's MSJ, p. 10) Plaintiff contends that under "Defendant's application of the humanitarian exception for late filings of derivative asylum requests, applicants would only be granted extensions of the two-

year deadline upon a showing of humanitarian reasons, which clearly is beyond that contemplated in the basis for equitable tolling.  Defendant cannot require, in the face of the basis for equitable tolling, applicants to demonstrate dramatic humanitarian reasons such as past persecution, suffering, or other inhumane treatment to explain a late filing and justify a mere extension of the filing deadline as Defendant proposes."  (Plaintiff's MSJ, pp. 10-11)

Although Plaintiff attempts to define "humanitarian reasons" to mean a showing of "past persecution, suffering or other inhumane treatment," (Id.) by referring to other immigration regulations addressing contexts other than that at issue here, the Service has been consistently clear that "although humanitarian exceptions are used throughout other Service regulations, the term is not defined so that individuals with exceptional cases are not shut out," 63 Fed.Reg. 3793, and "[t]here is [sic] no guideline or rules that can be, or have been,  set down to establish when a case meets the basis of a humanitarian extension." (DSOF, Ex. 1, p. 71)

Further, contrary to Plaintiff's assertion, requiring a tardy applicant to show that circumstances of a humanitarian nature prevented a timely filing neither conflates the analysis under the regulation with the equitable tolling test nor supplants application of equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). *See also Socop-Gonzalez v. INS,* 272 F.3d 1176 (9th Cir. 2001).  Plaintiff is correct that the equitable tolling test does not require a showing of humanitarian reasons.  Therefore, there is nothing on this record indicating that a tardy applicant is precluded from seeking

equitable tolling of the deadline under the traditional equitable tolling analysis regardless of whether such applicant is also able to establish humanitarian reasons.[12]  Likewise, under the regulation, the deadline may be extended where a tardy applicant is able to establish that circumstances of a humanitarian nature prevented the timely filing despite the fact that such applicant may not have been diligent or may have otherwise failed to establish equitable tolling.  The permutations are too numerous to be known or identified.  On the instant record, Plaintiff has not established that the Service's interpretation "is plainly erroneous or inconsistent with the regulation."  *Thomas Jefferson Univ.,* 512 U.S. at 512.

Defendant is correct that "the standard for judging an agency's interpretation of its regulations is not whether alternative interpretations exist..." (Defendant's Reply, p.4)  *See also Thomas Jefferson Univ.,* 512 U.S. at 512 ("Our task is not to decide which among several competing interpretations best serves the regulatory purpose.")  Instead, the Service's interpretation herein is controlling unless plainly erroneous or inconsistent with the regulation.  *Thomas Jefferson Univ.,* 512 U.S. at 512.  For the foregoing reasons, that deferential standard is met here.  The Court is aware that holding in favor of Defendant will keep Plaintiff and her husband separated from their children.  Nonetheless, on this record the Court is bound to defer to the Service's interpretation and application of the  regulation.  *Id.*

To the extent that Plaintiff argues that she has "established an issue of fact that she

---

[12]Defendant has not argued that the two-year deadline is not subject to equitable tolling. (*See* Defendant's Response in Opposition to Plaintiff's MSJ, pp. 7-8) (conceding that "equitable tolling applies in the immigration context...")  The Court has already held that, under the circumstances presented herein, Plaintiff is not entitled to equitable tolling of the deadline at issue.  (March 20, 2006 Order)  That determination does not mean that equitable tolling could not apply under different circumstances from those presented in this case.

offered 'humanitarian reasons' for extension/waiver of the two-year deadline" under her suggested interpretation that the extension should be "based on the hardship that will befall Plaintiff's family if they are not reunited through derivative asylum...," (Plaintiff's Response, pp. 4-5), such argument is moot given that the Service's interpretation prevails over Plaintiff's alternative interpretation.  Moreover, under the Service's interpretation, the record herein, including Plaintiff's March 4, 2003 letter (*see* DSOF, Ex. 1, p.21) reveals no issue of fact given that Plaintiff failed to make any showing that circumstances of a humanitarian nature prevented her from filing within the deadline.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that summary judgment shall be entered on behalf of Defendant.

IT IS FURTHER ORDERED that the Clerk of Court shall issue judgment accordingly and close its file in this matter.

DATED this 30th day of March, 2007.

_____

Héctor C. Estrada
United States Magistrate Judge